I didn't make a request, but I'm sure. So that it's referring to the same case, right? Except this is the sanctions part of it. It is, Your Honor. OK. And I think that you're on point, so. Thank you, Your Honor. And now, you're in this position, Mr. Ferkens was in. If you want to make a rebuttal argument, I would like to reserve. Will you stop short of your 10 minutes? I'd like to reserve three minutes for rebuttal, if I may, Your Honor. OK, well, watch the clock and stop yourself, then, after seven. Your Honor, the state of Washington that we've attempted to point out has legislatively mandated that a certain group of people who are public servants in this state should be protected from lawsuits that are maliciously prosecuted against them in the course of their profession. That statute, RCW 424350, specifically says that judges, prosecuting attorneys, and law enforcement officers, who are subject to being sued civilly and who feel that they have been maliciously prosecuted in a civil litigation, may file a counterclaim or their own individual action for malicious prosecution, with the legislature specifically making the finding that these servants are subject and the municipalities for whom they serve are subject to litigation when it isn't founded, and therefore, they should be given liquidated damage of $1,000 to the public servant and reimbursement for attorney's fees. In this particular case, there was no evidence, as we pointed out in our brief, by Mr. Hidalgo of any participation at all by Chief Badgley. And let me preface my comments to the court, if I may. Chief Ken Badgley served the city of Wenatchee as its police chief for approximately 13 years and was the chief of detective press in 1994 and 1995 when these child sexual abuse cases were taking place. The evidence before the court and the lower court was that Chief Badgley took no day-to-day participation in the investigation, and so nevertheless, he was sued under more or less of an umbrella or shotgun approach, along with everyone else in this litigation. Judge McDonald thought the theory was a supervisory liability. The theory was supervisory liability. If they have a claim against Officer Perez that's sufficient that the judge sent it to a jury, how can it be malicious prosecution to assert a claim against the police chief for failure to supervise Perez? Well, because first of all, you need to have some evidence that the chief of police violated the Constitution under a supervisory liability theory. And I refer you respectfully, Your Honor, to the Gosvick decision by Judge McDonald, where he painstakingly went through cartloads of evidence that were submitted against Chief Badgley and essentially said there's just nothing here other than throwing up everything against the wall, which the judge said in rather terse language, and hoping that the court will see that somehow there's a question of fact that Chief Badgley violated the Constitution. But there was no evidence. In fact, Mr. Hidalgo in his deposition testimony did not even know who Chief Badgley was. So for supervisory liability, you either have to have direct supervisory participation or you have to have knowledge. The key and touchstone word is knowledge that you're underling, the person you supervise. For your claim against the claimant for malicious prosecution, don't you have to have evidence of malice? In other words, they brought a suit. They didn't have probable cause. Your client won, and they brought it maliciously. I thought that was an element of malicious prosecution. There are two primary elements, whether there's lack of probable cause to bring the underlying civil suit and whether it was brought maliciously. Those are the two key elements. But they're conjunctive, right? You have to show both that there's a lack of probable cause and that it was brought maliciously to prevail for malicious prosecution, at least as I understand the State law. That's correct. You're correct. And the reason there was lack of probable cause and the reason there was malice is because Mr. Hidalgo didn't even know who he was suing, did not know who Chief Badgley was. Yet in his complaint and in the allegations he made, was saying that Chief Badgley engaged in a conspiracy with Detective Perez and others to specifically deprive him of his civil rights, which was completely unfounded and false. He had no factual basis at all to even raise a factual question to survive summary judgment that Chief Badgley was involved somehow in this litigation. And then to continue forward, the court, when it granted summary judgment, has to put us in the position of giving us every reasonable inference. And I think that evidence is sufficient to go to a trier of fact for the trier of fact to decide whether or not he did act without probable cause and whether he did act maliciously. Counsel, as I'm reading your briefs, and I've gone back over them again and listening to you today, your case is based on they should not have brought the case. Is that correct? That's correct. It's not based upon you shouldn't have continued it. It's that you should not have brought the case in the first place. Correct? Well, it is broad that if he has a good faith belief and has a factual basis to bring the case, certainly a litigant's entitled to do that. But my concern was that after the Gosvick decision came out and said there is no factual evidence to go forward against Chief Badgley, at that point it's a malicious prosecution to continue the litigation. And Mr. Hidalgo was put on notice by the published Gosvick decision, especially when he has the same attorney representing him, that there is no factual basis to sue the Chief of the Wenatchee Police Department. And at that point, there was no probable cause. And to continue that, asking for punitive damages, asking for a significant monetary gain, submitting a claim against the Chief for millions of dollars in personal monetary gain, then that is at least, at a minimum, a question of fact for malicious prosecution. Now, the other claim I want to bring to the Court's attention is in Washington, there is a negligent investigation cause of action. Mr. Hidalgo had no negligent investigation cause of action against my client, Chief Badgley. He pleaded it anyway. And the reason he doesn't is because in Washington, you only have a negligent investigation claim if you're part of a protected class, either a parent, guardian of a child who's been sexually abused. Mr. Hidalgo's victims of sexual abuse in this case were not his own children. So he didn't even have a cause of action. He was put on notice under Rule 11 that there is no cause of action. It's not even an arguable or debatable issue. And nevertheless, that was, the plaintiff did not dismiss that case, forcing Chief Badgley to go all the way through the summary judgment process. And I'd like the Court to focus in on that particular cause of action for our request that the Court respectfully reverse the district court that had abused its discretion in not imposing some sort of Rule 11 sanctions. I'm not going to suggest a number to the Court, but it's clear there is no cause of action. If you don't even, you're not even a member of the protected class that can bring that cause of action, yet you file it anyway, it violates the Rule 11 standards, it violates those rules, it's malicious. If you wanted to have three minutes rebuttal on your... I do. Thank you, Your Honor. Would you like to hold what you've got left? Thank you. I don't think I'll even take ten minutes to respond to this, Your Honor. The issue of Chief Badgley and supervisory liability is also an issue that has been appealed by Mr. Hidago to this Court and is before the Court. And the question is, is whether the mountain of evidence that Mr. Hidago marshaled to demonstrate that supervisory liability should have survived summary judgment in this case. And the answer to that case is quite clearly yes. There was a ton of evidence, starting with the fact that Detective Perez lied on his employment application because Mr. Perez had been, in fact, arrested four times, including two arrests for theft, and he listed on his employment application none of those. Shortly after that, he was there. His performance evaluations demonstrate that his supervisors characterized him as a ticking time bomb waiting to go off. Subsequent to that, he began to investigate some of the earlier cases, including the Green case, which Your Honors will be hearing about next, and used many of these abusive and coercive techniques against the Green children there. At the very same time, the media began to become involved in the case and started to write articles on a national level, including the article referenced in the Devereux decision, the Dorothy Rabinowitz series in the Wall Street Journal, criticizing not only Detective Perez but his supervisors for the abusive and coercive techniques that he was using. In addition to that, there were a minimum of four citizen complaints that were filed before the Hidalgo case against Mr. Perez, only three of which were actually investigated by the police department. The investigation was performed by Mr. Perez's good friend, Sergeant McNaughty, who you have a memo from him talking about Mr. Devereux instantly, and interestingly enough, and wondering if Mr. Devereux will remain dumb enough to tell him where Kim Navi is, or Mr. Kincaid. This evidence, combined with declarations of children and testimony of children in open court prior to Mr. Hidalgo's case, indicating that they have been – abusive interview techniques have been used against them, should have also placed Chief Badgley on notice that Mr. Perez was not, at that point, a ticking time bomb waiting to go off, but in fact was a time bomb that had gone off. In addition to that, in addition to that, Your Honor, the – Mr. Hidalgo's main accusers in this particular case were Donna and Melinda Everett. Donna Everett was Mr. Hidalgo's – or Mr. Perez's foster daughter. She lived with Mr. Perez, and yet Chief Badgley did nothing to alleviate the obvious conflict of interest of him investigating individuals with respect to allegations made by his own foster daughter. And before Mr. Hidalgo's case was charged and went to trial, CPS moved Melinda Everett, his other accuser, into Mr. Perez's home, and Chief Badgley again did nothing to alleviate the conflict of interest, stubbornly refusing to do anything, and leaving Detective Perez to continue his various investigations. In fact, there is not a police report in the record from Donna Everett – and this was the only charge that Manuel Hidalgo was convicted of – there's not a police report where Donna Everett accuses Manuel Hidalgo of sexual abuse, and yet two days before his trial, the charges are amended while she's living with Detective Perez, and suddenly she's making accusations against Mr. Hidalgo. Your Honors, there is a ton of evidence that indicate that there is a clear need for Mr. Badgley to take immediate action in this particular case. The clear need started as early as April – June of 1994. He ignored it for a year and a half and left Detective Perez to devastate the individuals. The only time that Chief Badgley never took action with respect to the obvious conflict of interest. And as soon as Donna and Melinda Everett were done testifying, which is part of this record, they were removed from Detective Perez's home and shipped off to group homes, never to see their siblings until they turned 18. So the question is, do we have probable cause to bring a claim against Chief Badgley? I think it's laughable, laughable to say that we don't have probable cause to bring a claim against Chief Badgley. Okay. Thank you, Mr. Purtle. Now, Mr. McMahon for a rebuttal argument. Thank you. Your Honor, hyperbole and rhetoric do not a civil rights violation make, and that's the argument that you just heard. I want to refer to the law and what Judge McDonald said, putting this counsel and Mr. Hidalgo on notice. There was no evidentiary support for plaintiff's allegation that Badgley somehow personally participated in the alleged constitutional harm for which Perez perpetrated upon the plaintiff. There was no evidentiary support for plaintiff's allegation that something Badgley did or did not do caused the alleged constitutional harm suffered by the plaintiff. There was no evidence that Badgley was deliberately indifferent to the alleged constitutional conduct by Perez. Therefore, the Court will grant summary judgment on all 1983 claims in favor of Badgley in his indictment. Which opinion are you reading from now? Pardon me, Your Honor? Which opinion are you reading from? I'm reading from the Gosvick decision cited at 239F sub 2nd, page 1101, Your Honor. Okay. But we're reviewing Judge Whaley's decision. Judge Whaley adopted that decision in ruling, in dismissing Chief Badgley in this case. I understand that. But Judge Whaley also said, had some reasoning, said specifically that he thought it was not malicious for the claims to have been asserted. Don't you need to address Judge Whaley's reasoning if you're asking us to reverse Judge Whaley? Well, my argument is that the evidence was the same, and we are attempting to reverse Judge Whaley, that because there wasn't any evidence, it's at least a fact question for a prior fact whether or not that was malicious or whether it lacked probable cause. And specifically, the negligent investigation claim, you know, we listen to the feelings of outrage that the counsel sets forth. But factually and legally, there's just nothing to it. He sued Chief Badgley for negligent investigation when there is absolutely no cause of action to do so. He's put on notice that you don't have a cause of action for negligent investigation, thumbs his nose at the system and said, I'm going to go forward and I'm going to sue, making that law enforcement official who's devoted his career to protecting the public to defend against that lawsuit. That's malicious. It's frivolous. There's no factual evidence, and there's no support for it. And I think respectfully, Judge Whaley simply said the trial's over, the defense won. It's not exactly what – I mean, I'm looking at an order from Judge Whaley where in detail he discusses probable cause, and then in detail he discusses malice. So, I mean, he's not just saying the trial's over and let's forget about it. He's at least analyzing it. Well, I think if there was no factual basis and he grants summary judgment, then at least he would be able to say, well, there's no evidence in the record that the plaintiff maliciously filed his claim against defendant Banchly. So, what's the evidence of malice in the record? You're saying the inference from lack of a good claim? The evidence in the record was that all of the evidence they presented didn't raise a factual question of any lawsuit that should have forced Chief Banchly to get sued. So, I think that's what we're trying to get at here, is that we're trying to get the plaintiff to defend himself in this litigation. Okay, thanks. Well, I guess we're out of time, but we appreciate your argument. Thank you. The Hidalgo v. Perez case shall be submitted. We thank Mr. McMahon and Mr. Perkins for their fine arguments. Now we go to the final of our trio of cases from arising out of the Wenatchee controversies, Green v. City of Wenatchee. And here we have Suzanne Elliott.
judges: Fernandez, Tashima, Gould